## ROWELL v. WILLIAMS *et al.*

1. **Municipal corporation:** DUTY TO KEEP SIDEWALKS IN REPAIR. The obligation of a lot owner in building his house to the line of a street, to so execute the work as to save the city from harm, and his consequent liability, not only to the city but to individuals, for injuries sustained by his neglect in this respect, does not relieve the city from its duty to keep its sidewalks in a passable and safe condition, and to place the requisite guards around places of danger, nor its liability for injuries resulting to an individual from its failure *so* to do.

2. —— LIABILITY FOR INJURIES: DEFECTIVE SIDEWALKS AND STREETS: NOTICE Where a city, by its charter, is vested with control over its streets and alleys, with power to cause sidewalks to be paved, such powers are accompanied with the obligation on the part of the city to keep those, the improvement of which has been undertaken and thrown open to the public use, in such a state of repair as to be reasonably safe for persons traveling or passing over the same ; and if an individual, without fault on his part, is injured by neglect or failure of the city in this respect, he may recover damages therefor against the city.

3. —— But it *seems* that for injuries resulting from an obstruction, or dangerous place in a sidewalk made or caused by an individual, the city would not be liable unless it had notice of the defect, and a reasonable time to remedy the same.

4. —— Whether such notice to a tax paying inhahitant of the city would be notice to the city, under this rule, *quere.*

5. **Jury and verdict:** ERROR WITHOUT PREJUDICE. Error on the part of the court below in refusing to receive the first verdict offered by the jury, because divided against the several defendants, and returning them to their room with the direction that they must find a gross sum against one or all of the defendants, will not operate to reverse the case when the appellee enters a remittitur, reducing the final verdict against the appellant to the same amount originally returned against him.

6. **Damages:** EXCESSIVE. The court refused in the present case (which was an action for damages for permanent injuries to the plaintiff, caused by falling into an excavation for a building, while passing along the sidewalk in which an opening had been made), to disturb a verdict for $7,000 against the city, on the ground that it was excessive.

Rowell v. Williams.

*Appeal from Pottawattamie District Court.*

MONDAY, JULY 25.

THE defendant Shindley, the owner of a lot in Council Bluffs, employed his co-defendants, Williams and For-stein, to erect a brick building thereon, — they doing all the work, including the excavation of the cellar. Plaintiff, passing along the pavement in front of his excavation, on the night of the third of June, 1869, fell into the same, receiving many and severe injuries. He brings this action against the parties above named, and also the city, charging all with negligence. The first jury were unable to agree; the second returned a verdict of $7,000 against the city, and $500, each, against the lot owner and contractors. Upon the suggestion of the court that they could not thus divide the damages, but must find the whole amount of the verdict against one or all, they retired, and returned $8,000 against the city alone. After the appeal to the general term, plaintiff entered a remittitur of all the judgment except $7,000, with its interest, and the same thing is done in this court. The case was never heard in the general term, but, under the legislation of the last general assembly, comes at once to this court.

The city alone appeals, and assigns for error the action of the court instructing the jury orally, in receiving the verdict after it was changed, in giving and refusing instructions, and in overruling motion for new trial.

*L. W. Ross, Robert Percival* and *Lyman & Hanna* for the appellants.

*Baldwin & Wright, W. F. Sapp* and *Clinton, Hart & Brewer* for the appellees.

WRIGHT, J.—If a perfect deluge of instructions could by possibility drift a case into a sea of error, plaintiff

might well distrust the correctness of his judgment in this instance. The remark is true, however, as far as we can judge from a most imperfect record, rather of those asked and refused than of those given.

These instructions cover twenty-nine pages, and are found, almost entire, four times in this record, which is otherwise quite voluminous. And notwithstanding they are copied thus often, it requires the utmost care and scrutiny to determine what instructions were given in chief, what at the instance of the parties, or which party excepted. This difficulty, too, is increased from the fact that the defendants have interests somewhat antagonistic; and whether a particular instruction was asked at the instance of the city (the appellant) or whether the city or some other defendant, excepted to the action of the court in giving and refusing instructions, it si next to impossible to tell. Where the responsibility rests for this, we do not know, nor is it, perhaps, material to determine. If, however, we should be concluded, by the state of the record, from reaching all the points made by counsel, or if they should be misapprehended, let the foregoing suggestions furnish the explanation.

There was testimony tending to show that the sidewalk was out of repair at the place where the accident occurred; **1. MUNICIPAL CORPORATION: duty to keep sidewalks in repair.** that in consequence of this defect defendant fell or was thrown into the excavation. And it was quite well established that there was nothing in the way of railing or otherwise, put up by the city or other persons to warn footmen of danger. The law as to the duty of care on the part of plaintiff, affirming and re-affirming that he could not recover if his own negligence or wrong contributed to the injury, was stated to the jury, so that nothing but the utmost willfulness could have led them to disregard it. It is conceded, also, that if the recovery is based upon a defect in the side-

walk, it must appear that the city was under a legal obligation to repair the same ; that the obligation was general or public, as contradistinguished from an obligation to an individual in virtue of some special agreement ; that it was out of repair ; that plaintiff sustained injury, and that the city knew of the claimed defect. It is further admitted, following the cases cited, that a lot owner, in building his house to the line of the street, undertakes that he will so execute the work as to save the city from harm ; or having the right to do a lawful act in a lawful and proper manner, he will not create nor continue a nuisance. *City of Chicago* v. *Robins*, 2 Black. 418 ; *S C.*, 4 Wal. 657. But it is not conceded, that, because of this obligation, there is no liability for want of care and diligence on the part of the city. The obligation of the lot owner to the city, and the consequent liability, not alone to the city, but also to individuals for injuries sustained, by no means relieves the city of the duty to keep its sidewalks and streets in passable and safe condition, and to place the requisite guards around places of danger, the city having by its officers or agents notice of such danger. The fact that the city may have a remedy over against a private party who has so used the sidewalk, or so left exposed an open area, or other dangerous pit or hole, as to produce an injury, by no means relieves the city of its duty, as above indicated. And if the two cases cited above, and relied upon by appellant, teach any thing, it is this very doctrine. For there the city was held liable under circumstances almost precisely like those before us, and afterward recovered the amount of the first judgment against the let owner. These views, briefly stated, constitute in substance the law of this case, and in no one respect did the instructions depart from them.

The obligation, however, of *this* city to repair this side-

2. —— liability for injuries : defective sidewalks and streets : notice. walk, and what would be sufficient notice of its defects, are questions to which counsel direct our attention, and which legitimately arise.

The court below held, upon the first proposition, that the city, by its charter, was vested with control over its streets and alleys, having power to cause sidewalks to be paved, and that these were accompanied with the obligation to keep them in a reasonable state of repair, so as to be reasonably safe for passengers, whether with vehicles or on foot ; and if, as a result of neglect in this respect, any one was injured without fault, he might recover. But for obstructions or injuries done by an individual the city would not be liable, until it has had notice and a reasonable time given to remove the obstructions or repair the injury. The appellant maintains that the powers of the city are not so absolute over the sidewalks as over the crossing ways or streets proper ; that the exercise of the authority given, as applied to sidewalks, certainly is discretionary ; that no imperative duty is imposed, and the city may hence, at will, make or omit these repairs. In these views we cannot concur.

The amended charter of the city, following almost literally the special charters granted to all cities before that time in the state, gives to the city power "to declare what shall be a nuisance, and to prevent, remove or abate the same, * * * to open, abolish, alter, widen, extend, establish, grade, pave or otherwise improve and keep in repair, streets, avenues, lanes, and alleys (§ 13, amendment to charter, laws of 1857, p. 115), and then by the original charter (1853 pp. 112, 115, §§ 24, 42, 4 and 5) the council are given power to appoint a street commissioner ; are given the control of the streets and alleys, with the power to cause sidewalks to be paved, requiring the owners to do the same, and, in case of neg-

Rowell v. Williams.

lect, the same may be done by the city, the expense being assessed on the contiguous lots. The said tax goes to the proper authorities for the improvement of the streets, and the city council supersedes the road supervisor within the corporation limits, and is to perform all his duties.

With this provision in view, keeping in mind that this accident occurred upon the principal street in this city, and that the sidewalk had been paved either by the city or under its directions, as provided by the statute, there can remain no question as to the duty, not at its mere discretion, but the absolute duty, of the city to see to these repairs. A statement of the rule, as applied to a case like that before us, perhaps as clear as anywhere, will be found in 4 Wal. 446 (*Supervisors* v. *U. S.*), to the effect, that when power is given to a public officer, the language used, though permissive in form, is in fact peremptory whenever the public interest or individual rights call for its exercise. What they are empowered to do for a third person the law requires shall be done. The power is given, not for their benefit, but for his. In all such cases, the legislative intent, and this is the test, "was not to devolve a mere discretion, but to impose a positive and absolute duty."

Not that it is to be understood from this that the council is bound to pave all sidewalks, or bring to a proper grade and passable condition all streets; but, when the improvement is undertaken, as for instance a sidewalk paved, the right or power to keep it in repair imposes the duty. If authorities are to be found in conflict with this view, they have escaped our notice.

Upon the subject of notice, it was held that this might be inferred from the notoriety of the defect or danger, from its continuation for such a length of time as to lead to the presumption that the proper officers did in fact know, or with proper diligence and care might have

known, the same.    So it was said *actual* notice would of course be sufficient, and notice to some principal or tax paying inhabitant of the city would be notice to the city. The only point made—and this is all that could fairly be made—is upon the concluding part of this construction, to wit: that holding notice to a tax payer good.   Upon this somewhat debatable ground we need not enter, since there was almost overwhelming proof that the city officers, the street commissioner, the city marshal, the street or city engineer, and one at least of the city council, had ample notice of this defect, and of the danger of this excavation, continuing from day to day and night to night, without protection.   As to the sufficiency of the notice, the jury could not possibly have entertained a doubt, without entering the at least doubtful field, whether notice to a tax payer would do—doubtful as to its law, and equally so as to the fact of actual notice to such person. If in this respect the court erred, it was error without a fair possibility of prejudice, for aside from it the jury could not have found otherwise than they did, upon this fact.

Finally, as to the action of the court in not receiving the first verdict, and in giving oral instructions.   When 5. JURY AND    the jury returned the first verdict, finding VERDICT : error  $7,000 against the city, $500 against the lot without pre-  owner and $500 against the contractors, the judice. court said to them, that they " could not thus divide upon their verdict, but must find a gross sum against one or all of the defendants, or in favor of all.   At this time the attorneys for the city were not present, while those for the other defendants were; but, whether present or not, can make no difference.   The verdict, since the entry of the remittitur, is precisely as it was and would have been but for the action of the court in directing the jury to bring in a new or amended verdict.   The city cannot

complain that plaintiff lost the benefit of the $1,000 against the other defendants, for it pays just what was first assessed, and not a cent more. Suppose there was the technical error ; there was no possible prejudice. None has been pointed out, and we have been unable to see how it could arise. *McNorton* v. *Acres*, 24 Iowa, 369.

As to the damages, we only say, the evidence is not all before us. It is very evident, however, that plaintiff was **6. DAMAGES:** most seriously injured, suffering intense pain **excessive.** for many months, being put to great expense, and is made a cripple for life. The case is not one for our interference. *McDonald* v. *C. & N. W. R. R. Co.*, *ante*, 170.

Affirmed.