POWERS v. THE CITY OF COUNCIL BLUFFS.

1. **Municipal Corporation** : NEGLIGENCE OF OFFICERS. Where the officers of a city have knowledge of the construction of improvements in a negligent manner, it is no defense against the consequences of such negligence that it was not authorized by the city council, which was charged with the making of the improvements.

2. ——— : ———: CARE REQUIRED. While a city is not liable for the consequences of a mere mistake, in a matter to be determined by the judgment of its officers, yet it can obtain such immunity only by showing that the mistake occurred while in the exercise of reasonable skill, prudence and care.

3. ———: IMPROVEMENT OF STREETS: NEGLIGENCE. Where a city establishes grades and improves streets, and the owners of adjacent property make improvements with reference thereto, the city is liable for negligently permitting obstructions by reason of which injuries occur to the property owners, even though such obstructions leave the property in no worse condition than it was before the city had improved the streets.

4. ———: WATER-WAYS: PREVIOUS FLOODS. It is the duty of a city to provide water-ways sufficient to carry off the water that might be reasonably expected to accumulate, judging from such floods as had previously occurred.

*Appeal from Pottawattamie District Court.*

THURSDAY, DECEMBER 12.

ACTION to recover damages by reason of plaintiff's premises being overflowed by water caused by an alleged defective sewer. A jury was waived, and there was a trial by the court.

At the request of the parties the court made the following special findings of fact:

1.   That plaintiff is the owner of lots 25 and 38, in the original town of Council Bluffs, and that he has owned the same for more than five years before the commencement of this action.

2.   That said lots front on Broadway in that city.

3.   That before the streets in said city were improved, or any system of drainage was adopted by said city, the natural drainage carried the surface water from a very large scope of country over and across said lots.

4.   That prior to the year 1869 the city had improved a street, called Madison street, in such manner as that a large portion of the surface water coming down on the west side thereof, and which, but for the improvement of said street, would have flowed upon and over plaintiff's lot, was conducted away from said lot.

5.   That in the year 1869 the city constructed a sewer across Broadway, which was intended to and did receive such surface water as flowed to it through a channel or water-way

across said street, into which channel a number of sewers and drains constructed by the city emptied.

6. That the said sewer across Broadway emptied into another sewer or drain constructed by the city, which conducted the water along the west line of plaintiff's property, and into a creek which flowed at the north side of said property.

7. That said sewer across Broadway, at the time of its construction, was of sufficient capacity to carry the surface water which would then be conducted to it by the sewers and water-ways then leading to it.

8. That in the year 1870 a gas-pipe was laid across said sewer, with the knowledge of the authorities of said city: that said pipe was inclosed in a box nine inches square, the top of which box was from twenty-one to twenty-four inches above the bottom of the sewer.

9. In the year 1871 the city constructed a sewer across Madison street, which received and conducted to the Broadway sewer the surface water, which, between the time of the improvement of Madison street and the construction of said sewer across that street, was conducted down that side thereof, which was two hundred feet from the plaintiff's premises.

10. That about the 1st day of June, 1875, there was a very heavy but not unusual rain-fall in said city, which caused a large amount of surface water to collect in the water-ways and sewers leading to said Broadway sewer, and that brush and other material floated by said waters into said sewer lodged against the box inclosing said gas-pipe, and formed a dam of sufficient strength to prevent the passage of any water through the sewer except such as flowed over the top of said box, and by reason of said obstruction the capacity of the same was reduced about one-third.

11. By reason of the insufficient capacity of said sewer to carry the water coming to it said water flowed over and across said street into plaintiff's premises, flooding the same,

and causing damage thereto to the amount of one thousand two hundred and seventy-five dollars.

From the foregoing facts the court finds, as a matter of law, that the defendant is liable for the damage so caused. Judgment accordingly. Defendant appeals.

*G. A. Holmes* and *John H. Keatley,* for appellant.

*Sapp & Lyman,* for appellee.

ROTHROCK, CH. J.—I. That a gas-pipe was laid across the sewer in the manner as stated in the eighth finding of fact does not admit of controversy. This finding is fully established by the evidence. One Joel Eaton was called as a witness by the plaintiff. He testified that he was secretary of the Council Bluffs Gas Company, and that in 1870 said company put down a pipe across the sewer in question. He was then asked to state by whose permission or authority he laid down those gas-pipes; to which he made answer that it was done by permission of Palmer, the mayor of the city. The question and answer were both objected to as incompetent, and as not the best evidence of the right to use the streets, and upon the ground that the city can be bound only by the acts of the city council. The objection was overruled. The witness proceeded to state that the mayor directed the gas-pipe to be put in, and that plaintiff was present and made objection to the mayor.

L. W. Babbitt, who was a member of the city council when the gas-pipe was laid, testified that the matter of putting the gas-pipe across the sewer was discussed in the council before and after the pipe was laid.

The plaintiff testified that the year after the gas-pipe was put in the culvert failed to carry off the water, and that he then notified the members of the city council, and asked them to do something about it.

It is urged in the argument that this evidence should not have been admitted, because the city could only give consent

*1. MUNICIPAL corporations: negligence of officers.*

to the laying of the pipe by its council, while in session. We apprehend that as city councils have authority to construct sewers, and have control of the streets for that purpose, and authority to permit gas-pipes to be laid, it would be a most unreasonable requirement to compel a party injured by negligent or improper construction to show that the city council, by resolution or vote, authorized the negligent acts to be done. The city acts through its officers in making improvements, and is bound by their negligence. If the gas-pipe were an obstruction the notice given by the plaintiff to the members of the city council was sufficient. See *Rowell v. Williams*, 29 Iowa, 210.

II. · It is urged that deciding to put in the gas-pipe across the sewer was a judicial act upon the part of the city, and 2. ——: ——: that, for an error of judgment as to its effect as care required. an obstruction, the city is not liable. This proposition leaves out of view the important consideration that in putting in said obstruction, or permitting it to be done, the city exercised reasonable skill, prudence and care. For a mere mistake, notwithstanding the exercise of proper care and the employment of competent skill, the corporation would not be liable. See *Vanpelt v. The City of Davenport*, 42 Iowa, 308.

In view of the fact, as found by the court, that the sewer was of sufficient capacity when it was constructed to carry off the water without injury to the adjoining premises, and that after it was obstructed by the gas-pipe it was not sufficient, of which the city had notice, it is evident that if the city was not culpably negligent in permitting the obstruction in the first instance, there was negligence in allowing it to remain.

III. It is urged that it was the right of the city to abandon all sewerage, and cease to keep up repairs, and allow the 3. ——: im- surface water to flow as it was wont to do without provement of streets: neg- sewers, provided the property of individuals is ligence. placed in no worse condition by such a course than before any improvements were made. To this proposi-

tion we cannot assent. Where a city establishes grades,. improves streets, makes culverts, etc., and the owners of property build and improve with reference to the improvements made by the city, the corporation is liable for negligently permitting obstructions by reason of which injuries occur to the property owners. It cannot escape liability upon the ground that the negligent acts caused the water to flow where it did originally. *Damour v. Lyons City*, 44 Iowa, 276.

IV. It is insisted that the flood which caused the injury was extraordinary in its destructive character, and that the finding of the court that the rain-fall was not unusual was contrary to the evidence. All of the witnesses who were interrogated upon the subject state that in that locality many severe rain storms have occurred. It is conceded by counsel for the appellant that the evidence shows that one storm in 1858 and another in 1869 were about equal in point of force and violence to that which occasioned the injury. The rule is that it is the duty of the city to provide water ways sufficient to carry off the water that might reasonably be expected to accumulate, judging from such floods as had previously occurred. That the finding in this case is correct under this rule see *Damour v. Lyons City*, *supra*, and *Mayor v. Bailey*, 2 Denio, 433.

4. ——: water ways: previous floods.

V. Finally, we may say that a careful examination of the testimony of all the witnesses has led us to the conclusion that all of the findings of fact find sufficient support in the evidence.

AFFIRMED.