## CITY OF DENVER v. RHODES.

1. While a municipal corporation cannot be compelled to provide waterways of sufficient capacity to carry off all surface waters likely to accumulate in the streets, yet such as the city has provided it is bound to keep in repair and free from obstructions, so that, up to their original capacity, they shall be efficient.

2. The rule that there is no implied liability for damages necessarily occasioned by the construction of a municipal improvement is subject to the qualification that a liability arises for all damages not necessarily incident to the work, and which are chargeable to the improper or unskilful manner of executing it.

3. A municipal corporation is required to execute the work of constructing a public improvement, such as a sewer, in a careful and skilful manner; and if, by reason of the neglect or want of skill of the persons engaged in the work, property of a citizen built with reference to an established grade is injured by surface water, the proper channels for the flow of which are obstructed, the city is liable.

4. The construction of a sewer, under a statute authorizing the passage of a city ordinance providing for such construction, is not a *public work* for the benefit of the people of the state, so as to shield the corporation from liability to persons whose property is damaged during the progress of the work.

5. When a municipality undertakes a public improvement, such as the construction of a sewer, it is bound to exercise the same degree of

care and prudence that a cautious individual would do if the whole loss or risk were his own; and it is liable, like an individual, for damages resulting from negligence or omission of duty.

6. A supervisory control over the work, and the discretionary power of the contract itself, establish the relation of principal and agent between the city and its contractor. In such case the rule is that the employer is liable for the negligence or misconduct of the contractor.

· *Appeal from Superior Court of City of Denver.*

THIS was an action brought by Rhodes against the city of Denver to recover for damages alleged to have been done to his stock in trade by backwater from obstructions in Fifteenth street, during a shower of rain. The plaintiff was a baker by occupation, and at the time the cause of action arose was the lessee of the basement rooms, and the areas adjoining, of a brick building erected and owned by one William J. Barker, situated on the corner of Fifteenth and Stout streets. Long previous to the time mentioned, these streets had been graded, and furnished with gutters for conducting surface water; and all water falling or accumulating in Fifteenth street, and in Stout street near its crossing with the latter, was conducted down Fifteenth street to the Platte river. These streets cross each other at a right angle. The course of Fifteenth street is northwest and southeast. Consequently the left side, as one goes up street, or southeast, is called the easterly side, and the opposite the westerly side. The Barker building is on the westerly side, and on the south side of Stout street. The obstruction was opposite the centers of the blocks immediately below, or northward of this building. It was caused by an excavation made across the street for the purpose of laying therein a pipe-sewer, the earth excavated being thrown out on both sides of the cut, and the sides thereof being shored up with boards. The trench for the sewer pipe had been excavated from the alley on the easterly side of the street entirely across it, and several feet into the opposite alley. The testimony is conflicting as to the

precise condition of the work when the rain occurred which did the damage. The depth of the excavation was from ten to fifteen feet. The embankment of earth thrown out of this trench appears, from the testimony, to have been from two to three feet high on both sides thereof when the excavation was made. The open spaces or areas adjoining the building occupied by the plaintiff were made by excavating away the earth on both fronts, erecting retaining walls, and covering the areas so made by the sidewalks. The basement apartments under said buildings were connected with these areas by means of doors in the basement or outer walls. Light to the areas was furnished from the outside, and also a passage-way thereto, by means of openings in the sidewalks, all being made close to the walls of the building, and all protected by iron railings. These outside improvements were made under a license or permit granted by the mayor of the city to said William J. Barker at the time he was erecting the building. It was in these basement rooms that the plaintiff carried on his bakery business. The answer alleges, and testimony was introduced on part of the city to prove, that the areas were improperly and insecurely constructed, and consequently contributed to the injury done to plaintiff's property.

The rain-fall occurred about 12:30 P. M. on July 30, 1881, and the obstruction in the street caused the water to flow back past the Barker building to California street, the next street beyond. The water flowed into and filled up the basement and areas occupied by the plaintiff, causing the retaining walls of the areas to give way, and the sidewalk to fall in, and causing great damage to the plaintiff's property.

The cause was first tried in the county court, resulting in a verdict and judgment for the plaintiff of $1,722.29, and afterwards in the superior court of the city of Denver, resulting in a verdict for the plaintiff of $1,722.19.

At the close of the plaintiff's direct proof in the last trial, counsel for the city moved for a judgment of non-suit, which was denied, and it is earnestly contended that this ruling was erroneous. The motion was as follows: "Defendant's counsel now move the court for a judgment herein as of nonsuit, for the following reasons: That in a case of this kind, assuming the facts to be as the plaintiff shows them, for the purpose of the motion, and they are simply these: that the city, through its contractor, was legally and properly constructing a sewer; that an unusual flood of water occurred, that could not have been expected; nobody was expected to provide for any such flow of water, — conceding that the sewer caused in part the damages, or even in whole the damages, yet there is no legal liability against the city, it being a municipality. There is a difference in principle in the case of a municipality and in the case of a private corporation or individual, because one is the representative of the public, and in the construction of the sewer was doing a public work for the public benefit, and the municipality would not be liable. Again, where the damages are caused by an unusual flood of rain, there can be no liability against any one under any circumstances, because it was not negligent to fail to prepare for such a thing; also that the evidence shows, if there was negligence, it was that of the contractor, and not that of the city. Yet there is no wrong shown by the evidence on the part of the contractor or the defendant here, unless it be inferred from the evidence which tends to show that Williams refused to break down some boards which might have prevented the injury at the time of the rainfall."

Mr. F. TILFORD, City Attorney, and Messrs. STALLCUP and GILMORE, for appellant.

Messrs. ROCKWELL and ROWELL, for appellee.

BECK, C. J. The first proposition advanced in behalf of the city is that, "from the record in this case, it is apparent that the well-settled principles of law have been violated again that a plaintiff might have judgment against a municipal corporation." Our first inquiry will be, What are these well-settled principles of law which have been so violated? for no judgment thus secured, whether for or against a municipal corporation, can be permitted to stand. One of the prominent grounds of complaint is stated in the appellant's *second* assignment of error, viz.: "The said court erred in overruling and denying the motion of this appellant for a nonsuit when this appellee had rested his case on the trial thereof." We may reasonably expect, therefore, to find in this motion, as filed, a statement of some of these well-settled principles which, in the opinion of counsel, were violated on the trial of this cause.

Referring to the motion, its propositions may be formulated as follows: (1) Assuming the facts to be as shown by the plaintiff's witnesses, and that the condition of the work caused the damages complained of, the city is not liable, because it was, by its contractor, legally and properly constructing a sewer, when an unusual flood of water occurred. (2) A municipality is the representative of the public, and when engaged in the construction of a sewer is doing a public work for the public benefit, and is therefore not subject to the rule of liability which obtains as to private corporations and individuals. (3) No one is liable for damages caused by an unusual flood of rain, because there is no negligence in failing to provide therefor. (4) If there was negligence or wrong in the prosecution of the work, it was on the part of the contractor and not of the city. (5) There was no wrong on part of the contractor, unless it be inferred from his refusal to break down some boards at the time of the rainfall, which might have prevented the injury, and for this the city is not liable.

1. Was the city, by its contractor, legally and properly constructing a sewer when the rain occurred? It must be borne in mind that Fifteenth street, across which the sewer was being constructed, had been previously graded and improved, and likewise that portion of Stout street lying in the immediate vicinity. Both streets had been furnished with drains or gutters for the flow of surface water, and the character of the improvements was such that surface waters flowing into Fifteenth street at and above the plaintiff's corner, and accumulating in its vicinity, were drained and caused to flow away from the plaintiff's place of business, down Fifteenth street, past the point of obstruction and into the Platte river; also that the sewer in course of construction was not a street improvement, but an under-ground pipe-sewer.

(a) A preliminary inquiry arises as to the manner in which the work was being done, and what precautions were being taken to guard against injury to property in the vicinity. It is asserted by defendant's counsel that the assumed reason assigned by the trial judge for denying the motion for nonsuit, and for submitting the cause to the jury, did not exist, and he appeals to the testimony of plaintiff's witnesses to sustain his assertion. The reason assigned by the court was that " there was evidence tending to show that, at the time of the extraordinary rain, the entire street was obstructed, so there could be no flow of water down either side." Was this a misrepresentation of the testimony then before the court?

The first witness called by the plaintiff was C. H. McLaughlin, who was at the time president of the city council. Upon the point in question he testified that the embankment of earth on either side of the trench which had been excavated across Fifteenth street was from two to three feet high; that the water in the center of the square above was over his boot-tops, and that he saw no provision made for the flowing of waters through the gutters; that the work should have been finished up by

leveling down, so that a portion of the street would have been open at the time. D. J. Cook, chief of police, said it was his impression that the street was dammed up clear across, but was not certain. Teams could not cross, and he thought the obstruction was such that water could not flow down the center of the street. The dam was such that water was backed up to California street, which was the second street above. The obstruction extended into the alley on the westerly side; and, while he did not know positively about the easterly side, he did know, from the grade of the surface, that if unobstructed, the water would have flowed down that side, so as not to have run into plaintiff's cellar. Edward Scholtz stated it to be his recollection that the obstructions extended entirely across the street, and that the water was dammed up above the same, while below there was very little standing water. T. G. Anderson, who occupied the opposite corner from the plaintiff, on the westerly side of Fifteenth street, said a few of the piling boards in the excavation had been removed, but the embankment of earth on both sides of the trench was in such condition that teams could not pass; that water above the trench was two feet deep, extending clear across the street, and was backed up to California street. It could not run down street until it rose high enough to run over the embankment. William Anderson, son of the last witness, corroborated his father's statements. James Lawson, who had a store in a building on the easterly side of the street, on the alley, said the work was finished on that side, the earth cleared away, and the piling boards taken out to the center of the street, when the rain came. He said, further, that the obstruction on the westerly side of the street caused the water to flow in a stream over to his side, so as to cover the sidewalk and run into his store. Louis Boyvin, who had a store in the same block, on the corner of Stout and Fifteenth streets, said the street was obstructed on that side, the gutter was filled up like the trench, but the side-

walk was clear; that some one shoveled away the dirt, and let the water out. As soon as the opening was made the water receded. He was asked what there was to open, and answered, "A dam made of sand left after filling the trench." A. H. Buhler, who worked in a store situated on the corner of the alley on the opposite or westerly side of the street, testified that the street was filled up with earth thrown out of the trench clear across from one sidewalk to the other. He also testified to the flooding of the street, and the back flow of water as far up the street as he could see.

The testimony is all positive on the point that the water was dammed up below the plaintiff's premises at the trench, and caused to flow back and submerge his sidewalk, and to flow down through the openings therein into the basement and areas, so as to fill them full. We do not hesitate, in view of this testimony, to affirm the statement of the trial judge that there was testimony tending to show that the entire street crossing was obstructed during the rain, so there could be no flow of water down either side.

(b) Was this a legal and proper construction, across an improved street, of an under-ground pipe-sewer? The general rule of law laid down by many respectable authorities, and adopted by this court, concerning the obstruction of water-ways, is that municipal corporations cannot be compelled to provide water-ways of sufficient capacity to carry off all surface waters likely to accumulate in the streets; but such as the city has provided it shall keep in repair and free from obstructions, so that, up to their original capacity, they shall be efficient. *City of Denver v. Capelli,* 4 Colo. 25; *Nims v. Mayor,* 59 N. Y. 500; Shear. & R. Neg. § 151. The rule of law that there is no implied liability for damages necessarily occasioned by the construction of a municipal improvement is held to be subject to the qualification that a liability arises for all damages not necessarily incident to

the work, and which are chargeable to the improper or unskilful manner of executing it. 2 Dill. Mun. Corp. § 1050. When a citizen erects a building, and otherwise improves his property, with reference to established grades, and other street improvements of the character here shown to have existed, a municipal liability arises, either from a negligent execution of a corporate work, by reason whereof the streets and gutters are so obstructed as to cause his property to be flooded with water and damaged, or from a negligent failure to keep the water-ways in repair, whereby the like injuries are occasioned. *Powers v. City of Council Bluffs*, 50 Iowa, 197; 2 Dill. Mun. Corp. §§ 1050, 1051. The municipality, in such cases, is required to execute the work in a careful and skilful manner, and is held liable for negligence or unskilfulness in the execution of the work, resulting in damage to property, where no fault of the owner contributes thereto. It may therefore be laid down as a proposition of law applicable to this case, that if the street and gutters were so obstructed by the city, or by its authority, during the rain storm, as to cause the falling water to dam up entirely across said street, and to flow back from such obstruction into the basement and areas occupied by the plaintiff, and to damage his property, and if the streets on which his bakery was located were so graded and improved that but for said obstruction the water which occasioned the damage would have been conducted harmlessly away therefrom, then the work of constructing said under-ground sewer was not conducted with that degree of prudence, care and skill which the law requires.

2. The point raised, that the city was engaged in the construction of a public work for the benefit of the public, and for that reason was not liable for damages, is not correct either as to the proposition of fact or of law, if by the terms "public" and "public work" the public generally and a work in which the state is interested be

intended.   As we have already seen, the work involved
was the laying of an under-ground pipe-sewer.   In the
nature of things, this work could not benefit the general
public or the state, but the city only.   That the work
was authorized by an act of the legislature, as alleged in
the defendant's answer, does not change the fact.   That
act is amendatory to the city charter, and authorizes the
city, by virtue of an ordinance to be passed in conform-
ity with its provisions, to adopt a plan of sewerage, and
to construct sewers through and along the streets and
alleys of the city.   It therefore plainly appears from the
act itself that the work authorized was for the benefit of
the city alone, and that the general public or the state
was not to be benefited thereby, as in the case of public
highways, or of enterprises in which the public generally
are beneficially interested.   *City of Chicago v. Joney*, 60
Ill. 383; *Same v. Dermody*, 61 Ill. 431.

Nor is the further proposition maintainable, that a dif-
ferent rule of liability exists where a work of this char-
acter is being constructed by a municipality from that
applicable to an individual in a similar case.   When a
municipality undertakes such a work, it is bound to ex-
ercise the same degree of care and prudence a cautious
individual would do if the whole loss or risk were his
own; and it is liable, like an individual, for damages re-
sulting from negligence or omission of duty.   Shear. &
R. Neg. § 144; *Harper v. City of Milwaukee*, 30 Wis.
372; *Barton v. City of Syracuse*, 36 N. Y. 54.   It is held
that a municipal corporation is not liable to an action for
a failure or neglect to make corporate improvements,
such as grading streets, making drains, sewers, and the
like, for the reason that such powers are *quasi* judicial
and discretionary, to be exercised as the public interest
may require.   It is likewise held that such corporation is
not liable for an error of judgment in adopting an in-
judicious plan, or one of insufficient capacity for the pur-
pose intended.   But there is great unanimity in the

authorities upon the point that where the plan of a municipal work, such as gutters, drains and sewers, has been determined upon, the work of constructing them is ministerial, and must be performed in a skilful, prudent and careful manner, so as not to injure private property; also that the municipality is liable in a civil action for damages caused by the careless or unskilful manner of performing the work, or for a failure of its duty to keep the same in good condition and repair. 2 Dill. Mun. Corp. § 1049; *City of Logansport v. Wright*, 25 Ind. 512; *Mills v. City of Brooklyn*, 32 N. Y. 489; *McCarthy v. City of Syracuse*, 46 N. Y. 196; *Barton v. City of Syracuse, supra.* It was held in *Nims v. Mayor*, 59 N. Y. 508, that the city was liable for any neglect in the proper maintenance of a sewer, or for changes or alterations made by the city, or with the knowledge of the city officers, in its structure, by means of which the waters were obstructed in their passage, and damage ensued to others.

3. The proposition that no one is liable for damages caused by an unusual flood of rain, because there is no negligence in failing to provide therefor, if correct as to any class of circumstances, does not justify the total obstruction of a street so improved that no damage would have been suffered if proper passages had been left for the escape of the water. We know of no rule of law or legal principle which can be invoked in support of this third proposition which will make it applicable to the facts and circumstances of this case. An " unusual flood of rain " does not indicate a greater or more severe rain than has theretofore occurred, but rather such a rain as does not usually, or but rarely occur.

The rule is laid down in *Mayor v. Bailey*, 2 Denio, 440, 441, that in the construction of a public work which may be called upon to resist sudden freshets, like a dam across a stream of water, the degree of care or foresight which it is necessary to use must always be in proportion to the

injury likely to result from the event to be guarded against; also that such a flood as had been known to occur upon a stream within the memory of man should have been anticipated by those in charge of the work of construction. In that case there was testimony that, more than twenty years previous to the injury complained of, a somewhat greater flood occurred; that one as great occurred four years previous; and another, nearly as great, had occurred two years previous. The court say: "If the evidence of those witnesses is to be credited, therefore, the flood of 1841 was an occurrence which ordinary care and prudence should have anticipated and guarded against."

In *Powers v. City of Council Bluffs, supra,* it was relied on as matter of defense that the rain-fall which occasioned the damage was an extraordinary one. Witnesses testified that many severe rain-storms had occurred in the vicinity; and defendant's counsel admitted that two storms had occurred, one *seventeen* and the other *six* years previously, which were about equal in force and violence to the one in question. The court held it to have been the duty of the city to make provision for such floods as may be expected, judging from such as had previously occurred.

In *City of Denver v. Capelli,* 4 Colo. 29, error was assigned upon an instruction informing the jury, in substance, that such a rain-fall as had not been of frequent, but had been of occasional, occurrence within the knowledge of persons then living in the city, could not be said to be the act of God; and that, if said rain-fall might have reasonably been anticipated from past experience, no matter how great or violent, the defense based thereon must fail. The only error pointed out by the court in reviewing this instruction was that the court thought it was "so worded as to create the impression upon the minds of the jury that it was the duty of the defendant, possessed of the knowledge that extraordinary rain-falls

at more or less remote intervals had visited the city, to adopt such a system of drainage as would effectually protect property owners from injury resulting from the overflow of their premises occasioned by such unusual rain-falls;" whereas the law imposed no such duty.

As before stated, the rule in this state is that, while no legal obligation rests upon a municipal corporation to provide water-ways of sufficient capacity to protect the property of citizens from overflow and damage, yet such as have been provided must be kept in repair, and free from obstructions. This rule is subject to the right of the city to make necessary municipal improvements in a prudent and skilful manner, although the work may cause a partial obstruction of an improved street. In the present case the evidence on the part of the plaintiff tends to show that the work of constructing the sewer across the street was carelessly and injudiciously performed; also that the street improvements were of sufficient capacity to have protected the property from damage, if the work had been properly conducted. The shower which occasioned the damage in the present instance was a severe one, but it is only necessary to refer to the testimony on this point, which was produced on part of the defendant, to see that it was by no means unprecedented. Frank M. Neal, the signal officer in Denver, said it was unusual, but he thought the amount of rain or hail which fell in the month of May preceding was equal or greater, but it was in the form of ice, or wet, heavy snow. Thomas Williams, a brother of the contractor, said he never saw such a rain in all his life. Richard Sopris, then mayor of the city, and who had resided therein twenty-four years, on being asked what kind of a rain it was with reference to the rains in this country, answered: "Well, it was a harder rain than we usually have had in Denver, and the heaviest part of it fell south of this locality." On cross-examination he was asked whether he had known of other rains that

would be called unusual. His answer was: "I have seen some pretty hard rains here. *Question.* How many? *Answer.* A half a dozen at any rate." Frank Sweedy, in answer to the question what kind of a rain it was, replied: "A pretty big, heavy rain. *Question.* A great fall of water, was it? *Answer.* Yes, sir."

In view of the evidence, we think the severity of the rain-storm did not constitute a defense to the action.

4. The next defensive position assumed is, if there was negligence or wrong in the prosecution of the work, it was on the part of the contractor, and not of the city. Two points appear to be relied upon in support of this proposition: *First,* that the legislature, by an act passed in 1879, had required the work to be let by contract to the lowest bidder; *second,* that the person to whom the work was let was an independent contractor; consequently the city was not liable.

The answer sets out that a system of sewerage was provided by an ordinance duly passed and adopted in conformity with the legislative act just referred to, which, among other things, provided for the construction of the sewer in question across Fifteenth street; that a contract for its construction was let to one Joseph Williams, who was prosecuting the work thereunder at the time of the rain-fall. The legislative act mentioned was an enabling act amendatory of the city charter; and, while it required contracts of this character to be let to the lowest responsible bidder, it did not divest the city authorities of control over the contractor and the work. The specifications of the contract, introduced by the plaintiff, show that the city retained a supervisory control over the work. It was to be performed under the direction of the city engineer and the city sewer committee. Power to make alterations in the manner, extent and plan of the work, as it progressed, was reserved, as was also authority to annul the contract, and to relet the work to another contractor in case Williams failed to

comply with the terms of his contract. Among other reservations of authority and control over the work is the following: "(41) The contractor shall commence the work at such points as the engineer and sewer committee may direct, and shall conform to their directions as to the order of time in which the different parts of the work shall be done, as well as to all the engineer's other instructions as to the mode of doing the same, including the length of street or alley that may be taken up in advance of the back filling." Two conclusions arise from the foregoing: one, that it was not deemed necessary, either by the city or its contractor, in excavating for and laying the sewer pipe across a street, to obstruct the entire street crossing; the other, that it was the duty of the city engineer to decide how many feet of the street crossing might be excavated in advance of restoring the part previously excavated to its original condition. It is evident that the legislative act furnishes no ground for exempting the city from liability.

Was Williams an independent contractor? It is elementary that the doctrine of *respondeat superior* does not extend to independent contracts; that is to say, to such contracts as leave the party for whom the work is to be done no choice in the selection of the workmen and no control over the manner of doing the work under the contract. Clearly, this case does not come within the principle stated. The city had complete jurisdiction and control of the streets, sidewalks, sewers and public works and municipal improvements generally, with power to adopt systems and plans for the construction of all improvements, and with a supervisory control over the work of construction. In such cases the primary responsibility rests upon the city to keep its improvements in repair and in an effective condition. For negligence in the performance of these duties, resulting in injury to the persons or property of citizens, the corporation must respond in damages, provided the parties injured are free

from contributory negligence. The contract with Williams was not an independent contract. The supervisory control over the work, and the discretionary power over the contract itself, establish the relation of principal and agent between the city and its contractor. In such case the rule is that the employer is liable for the negligence or misconduct of the contractor. *City of Chicago v. Joney, supra; Same v. Dermody, supra; City of Detroit v. Corey,* 9 Mich. 165; *Harper v. City of Milwaukee,* 30 Wis. 372.

The last point raised and relied upon in support of the alleged error in denying the motion for nonsuit is that the city cannot be held liable for the refusal of the contractor to break down certain boards placed in the sewer-trench for shoring purposes, which, if done, might have prevented the injury. It is insisted that what occurred at this time was collateral to and independent of the course of the work. This is not a legitimate point in the case, and is not and cannot be assigned for error, for the reason that the court, at the request of the defendant, instructed the jury in accordance with the counsel's view as above expressed.

For the reasons assigned, we are of opinion that no error was committed in denying the motion for a nonsuit.

We now pass to another defense, styled in defendant's brief, "The law concerning surface water." If we correctly interpret the proposition, it is that the condition of the work in progress, and the obstruction of the streets and sewers, was not the direct cause of the injury to plaintiff's property, but it required an unusual and unparalleled rain-fall, and the gathering of an unusual amount of surface water, to connect them in the remotest degree. Another allegation is: "He who has property where surface water, in a great rain-fall, may reach it, is unfortunate, whether he be negligent or not. Those who would escape it must flee to the high hills or mount-

ains." The cases cited in support of these propositions relate almost exclusively to the sufficiency of the plan or system of improvements adopted by a municipal corporation, or to the failure of such corporation to adopt plans and make improvements sufficient to afford. protection to the property of citizens from overflow in time of severe rain-falls and freshets. These cases are based upon the principle that there is no liability for a failure to exercise the powers possessed by a municipal corporation to improve its streets, construct gutters, or to provide other means of drainage for surface water. It is evident, from authorities already cited, that this is a very different question from that upon which the present action is founded. Here the system of grading and for drainage of surface water had been adopted, and the work completed; and there was evidence tending to prove that but for the obstruction of the street and gutters all the surface water would have been carried off without injury to the plaintiff. The cases relating to the grading of streets involve another principle not applicable to the case at bar, viz., the right of a city to establish the grade of its streets, and then to reduce them to the grade so established, although the effect of the work, when completed, may be injurious to abutting property. The irrelevancy of the cases cited by counsel to the principles involved in the case here presented by the pleadings and evidence may be illustrated by the citation, *Alden v. City of Minneapolis*, 24 Minn. 261. The injury to plaintiff's property in this case appears to have resulted largely from the failure of the city to provide sufficient drainage. The streets had been reduced to the established grade, and the court say: "The improvements, as then made, were sufficient to carry off, as fast as collected, all surface waters accumulating there during ordinary rains, but were inadequate in very violent or heavy showers, such as those occasioning the damage in this case. * * * There was no negligence or want of skill on

the part of the defendant in the making of those improvements, or in keeping them in proper repair." This class of cases has no application to a case wherein the street improvements are adequate, and the *gravamen* of the action is the injury arising from their obstruction.

It is a recognized rule of law that there is no implied liability for damages necessarily occasioned by the construction of any municipal improvement authorized by law; yet if there be negligence or want of skill in its execution, a liability arises for damages thus unnecessarily incurred. The result of Judge Dillon's inquiries concerning injury thus occasioned by surface water is to the same effect. It is that municipal corporations have a right to bring their streets to grade, and are not ordinarily liable for simply failing to provide culverts or gutters adequate to keep surface water off from adjoining lots *below grade;* but that they are liable where the property of private persons is flooded, either directly or by water being set back, where this is the result of the negligent execution of the plan adopted for the construction of gutters, drains, culverts or sewers, or of the negligent failure to keep the same in repair and free from obstruction, whether the lots are below the grade of the street or not; and he says there is great unanimity in the cases in support of these principles. 2 Dill. Mun. Corp. § 1051.

It is alleged in the answer, and proof to support the defense was produced on the trial, that the immediate cause of damage to plaintiff's property was the defective construction of the areas under the sidewalks in front of the building occupied by him, together with the openings made in said sidewalks to supply light and for a passageway to said areas. These were purely questions of fact, and were fairly submitted as such to the jury trying the cause. The jury did not sustain this defense, and we are

not able to say that the finding was contrary to the evidence produced.

We fail to discover any error sufficient to reverse this judgment.    Judgment affirmed.

*Affirmed.*