10   413
30s  109

[No. 1289.]
## AICHER v. THE CITY OF DENVER.

1. MUNICIPAL CORPORATIONS—DAMAGES.

A city is not bound to protect from surface waters those who may be so unfortunate as to own property which is below the general level of the street, and is not liable for damage to improvements made on land which is below the grade which the city authorities may establish, caused by a failure on the part of the city to provide for the drainage and disposition of the surface water, or the adoption of an imperfect plan or insufficient drainways to carry off waters in case of excessive storms.

2. CONSTITUTIONAL PROVISIONS—TAKING PRIVATE PROPERTY FOR PUBLIC USE.

Municipal acts, like the establishment of grades for streets, building of drains, or the construction of sewers under a positive and direct legislative authority, so long as they do not directly encroach on contiguous property, although they may impair its use by their indirect consequences, do not constitute a violation of the constitutional provision which prohibits the taking of private property for public use without just compensation. Such acts are not a taking of property within the meaning of this constitutional provision.

3. PRACTICE—ERROR WITHOUT PREJUDICE.

Where a plaintiff failed to prove a case which would entitle him to maintain his suit, he will not be heard to complain of any error which may have occurred during the progress of the trial. In other words, he must prove what is essential to a favorable judgment in order to insist that the error is fatal.

*Error to the District Court of Arapahoe County.*

Mr. W. T. HUGHES, for plaintiff in error.

Mr. F. A. WILLIAMS and Mr. G. Q. RICHMOND, for defendant in error.

BISSELL, J., delivered the opinion of the court.

Of the numerous assignments of error, but three distinct propositions are presented, and to them our attention will be specifically directed. As the matters of fact on which they are predicated are exhibited by the unsatisfactory abstract submitted, none of them can be successfully maintained, nor can we extract from the record to which we were compelled to resort, sufficient evidence to warrant the plaintiff in error to complain of the adverse verdict.

Aicher was the owner of some lots in the city of Denver on the corner or Clarkson street and 20th avenue. He exhibited the deed by which he acquired title and proved his possession. He commenced improving the property in 1881 and built a house on it. At the time this improvement was made, property in that vicinity was largely unimproved, the streets and alleys were not all laid out, and in the rear of the premises there was what the plaintiff calls a gulch or small drain running from the southeast to the northwest, along which the surface waters were accustomed to pass on their way to the Platte river into which nearly all the drainage of that section ultimately flows. In that vicinity and to the south and east there is quite a grade so that the natural drainage is to the north and west and to the river. As streets were laid out and the adjacent property improved the drain was filled up, but there is nothing in the record to show that the city adopted any general plan or system of sewerage or drainage to dispose of the accumulating surface waters in the case of storms. When Aicher built his house he did not obtain the then established grade of the streets. He gave some evidence to the proposition that he understood his contractor had made an application to find out what the

grade was, but he gave no proof that the contractor ascertained it, or that the improvements were built with reference to it. In fact, the evidence shows otherwise, because according to the testimony of the two engineers who were produced by the city, the grade of 1881 was from three to five feet higher than any subsequently established, and if the property had been built with reference to it, it certainly would have been several feet above the sidewalk which Aicher afterwards constructed. Aicher subsequently built a barn on the rear end of his lot and laid a sidewalk about his premises. These matters are unimportant except with reference to the walk, which of itself has very little significance in the determination of the questions at issue. In 1891, he built a walk about his premises on Clarkson street and 20th avenue, and at that time procured from the city engineer's office what appears to be a certificate of survey for the grade of the walk, giving its general elevation and purporting to state the level on which the walk should be laid. According to the certificate, the walk would appear to have been inspected and approved as constructed. This is the only evidence there is to show that any grade had been established at that point. The plaintiff offered no evidence as to what the grade of the street was when the walk was built, or whether there had been any attempt on the part of the city to fix and establish the level of the street or to improve it in accordance with any general plan or any established grade. Afterwards, and in 1893, the tramway company constructed one of its lines so that it ran down Clarkson street and up 20th avenue, around the corner of Aicher's lots. There is nothing to show that this track was not laid on the then existing grade, nor anything tending to prove that the company altered the street, except some indirect and uncertain evidence to the point that when they laid the curve around the corner the surface of the street was raised above its former general level. Whether the company raised the street above the established grade does not appear. When this road was constructed a wooden culvert or drain was placed at the corner and under

Clarkson street and 20th avenue as they joined, which would provide a way for the passage of surface water. This drain was some twenty inches to two feet wide by eight to twelve inches high, and was the only one which had been put in when the damage complained of was sustained. There was some evidence to the effect that it was inadequate to carry off the water which accumulated by reason of the filling up of the streets and alleys, and that it was placed too low to perfectly serve the purpose for which it was built. There was a little evidence to the effect that when the premises were flooded it was clogged and obstructed, but whether it was the result of the storm, or whether it had been imperfectly cared for and maintained was not proven. In August, 1894, there was a very heavy rain fall, commencing about three and ending somewhere before nine in the evening; the surface waters came down in large quantities from the southerly and easterly section of the city, and the drain was insufficient to carry them off. The water set back, flooded the premises, filled the cellar, and did considerable local damage. According to the evidence, the water did not flow over the lot solely because it was set back by the street obstruction but it flowed from the rear across the alley and on to the lot from the easterly section of the city. How much was back water, and how much flowed on from the southeasterly direction, is not evident, nor was it probably capable of proof. There was evidence to the point that the lot itself was several inches below the level of the sidewalk and this would permit a large influx of water. The plaintiff's proof was not directed so much to the proposition of the immediate and local damage, but it was rather in the direction of proving that all his improvements were substantially destroyed and he was entitled to recover their full value for he gave testimony respecting the cost of the barn, house, shrubbery, and other improvements. The city engineers gave evidence that the certificate furnished when the sidewalk was laid, was a recommendation rather than a statement of an established grade, and that the grade of 1881 was several

feet higher than that of 1887, and that if the house had been built on the former, it would have been far above the present level of the street as well as the present level of the sidewalk. The case was tried to the jury, who viewed the premises and rendered a verdict for the city, thereby finding all questions of fact substantially against the plaintiff in error, except as their judgment may have been controlled by the law expressed in the instructions.

The first point for which the plaintiff in error contends, is that when the city attempts to care for, establish, or alter the grade of its streets and provide drains and culverts for the carrying off of the water, which prove inadequate, and there is resulting damage, it is necessarily liable. To support this contention, he relies very largely on the case of the *Rochester White Lead Company v. The City of Rochester*, 3 N. Y. Ct. of App. 463, attempting from it and some similar authorities to maintain that where a city undertakes to construct a drain or culvert for the disposition of water, they are responsible for its inadequacy, as well as for any defect in its construction. We are unable to concede that this authority is applicable. That was a case where the city of Rochester undertook to change, direct, and control the course of a natural stream, and built a culvert for the purpose of permitting the passage of water and controlling it within certain defined limits. There is a wide and marked difference in the principle which controls and measures the relative rights and duties of the municipality and the individual property owner in a case like this, and the one which is presented by the plaintiff's proof. In the *Rochester* case the question involved related to the right of the city to interfere with a natural watercourse, and its duty when it attempts to alter and control its bed and current. In the present, the only matter which would be involved, if a case had been made by the proof, is the responsibility of the city for changes in its streets which may so affect the flow, direction and drainage of surface waters as to occasion consequential damages to adjacent property. It is a general doctrine in which the authorities almost univer-

sally concur, that a city is not bound to protect from surface waters those who may be so unfortunate as to own property which is below the general level of the street. If a person sees fit to erect improvements on land which is below the grade which the city authorities may establish, a failure on their part to provide for the drainage and disposition of surface waters, or the adoption of an imperfect plan for this purpose, or of insufficient drainways to carry off waters in case of excessive storms, as a rule impose on the city no liability. The party is bound to protect himself; to see that his improvements are above grade, and thus avoid any dangers and difficulties which may come from common or unusual storms. This whole subject is very exhaustively discussed in 2 Dillon's Mun. Corp., §§ 1038, 1039, et seq. We know of no general rule of law which would permit the plaintiff to recover unless he has made a case which can be taken to be without this principle. This he has not done. He has failed to show whether the track was on the grade fixed by the city, and he has likewise omitted to prove that this drainway was built by the city and imperfectly constructed.

Plaintiff in error likewise insists that this destruction of his property is a violation of the constitutional provision which forbids the taking of private property for public purposes without just compensation. It may be laid down as a general proposition, that all municipal acts like the establishment of grades, building of drains, or the construction of sewers under a direct and positive legislative authority, so long as they do not directly encroach on contiguous property, although they may impair its use by their indirect consequences, do not constitute a taking within this constitutional provision. *Transportation Co. v. Chicago*, 99 U. S. 635; *City of Denver v. Rhodes*, 9 Colo. 554; *City of Denver v. Vernia*, 8 Colo. 399.

A case is not presented which calls on us to determine how far, if at all, the city would ever be liable for an alteration in its grades, nor how far it must respond for resulting injuries. There is a total absence of proof in regard to the grade of the

street. Proof that the sidewalk was laid on grade does not compel the conclusion that the grade of the street was the same as the grade of the walk, or that there had ever been an attempt by the city to put the street on the grade which had been established in 1887. There was proof that the grade of 1881, when the improvements were built, was very much higher than the present level of the street, and had they been put up with reference to the one thus established, the plaintiff would not have sustained the damage of which he complains.

Counsel urgently insist that the court erred in giving an instruction respecting the liability of the tramway company, on the theory that if they found that the damages resulted exclusively from the manner in which the tramway company built its tracks around the corner, the city could in no event be liable. The force of this instruction perhaps would be more readily apparent, if we should state that the suit was originally begun against the city and the company on the theory that they were jointly liable for the injury. The plaintiff dismissed the suit against the tramway company and continued it as to the city. The only proof offered of any change which the company made in the street, was to the point that when it built its tracks around the curve, it raised the street level, which according to his contention had much to do with the backset of the water. The instruction was with reference to this evidence. The complaint is that since the proof was of this character, and the instruction in that form the plaintiff was virtually instructed out of court. Measurably this may be true, because there was no evidence of any change in the street, except that which was made by the tramway company, and the jury from this instruction may have concluded that this was the real cause of the damage. We do not insist that the instruction was entirely accurate, nor that under proper circumstances error might not be successfully predicated on it. We do not feel called on, however, to determine directly whether it was or was not error, nor to reverse the case should we find error

was committed in giving it. From our antecedent discussion it is plain the plaintiff did not prove a case which would entitle him to maintain his suit. Failing to produce proof respecting the grade and a change in it; failing to establish that he built his house on the existing grade when it was put up; failing to prove that the damages came from any unlawful interference with the proper street level, or from any improper construction or maintenance of a drain which the city had put in, he was not entitled to a verdict, and not being entitled to a verdict he cannot be heard to complain of any error which may have occurred during the progress of the trial. In other words, he must prove what is essential to a favorable judgment in order to insist that the error is fatal. *Clanton v. Ryan*, 14 Colo. 419; *Troth v. Crow*, 1 Colo. Ct. of App. 453.

This principle is equally conclusive of the error laid on the refusal of the court to compel counsel for the city to submit to the plaintiff's attorney, the data which the witness used for the purpose of refreshing his memory. We doubt seriously whether it was not the privilege of counsel to examine the data at the time the testimony was taken. We know of no rule which requires him to wait until the memorandum is offered in evidence when it is made the basis of an examination. Even if this be true, it is not an error which would affect substantial rights when it is assumed and determined that the plaintiff has failed to substantiate his cause of action.

Since we conclude the plaintiff did not offer sufficient proof to entitle him to a verdict, we may not reverse the judgment because of the errors which he has discussed. The judgment will accordingly be affirmed.

*Affirmed.*