Cunningham, Presiding Judge.
On the 30th day of July, 1910, the plaintiff Hoyt, appellee here, filed his complaint in the district court, claiming damages on account, as it is alleged, of negligence on the part of the defendant in permitting a band of sheep belonging to it, and which was afflicted with a disease known as scab, to stray from their accustomed range and to become commingled with the sheep of plaintiff, thus communicating the disorder to plaintiff’s flock, resulting in the death of many of the latter’s'sheep, great damage to those that did not die, loss of the wool crop or clip, and heavy expense incident to the treating of his flock while in its diseased condition. Prom a judgment in favor of the plaintiff, defendant appeals.
It is not denied that defendant’s flock was afflicted with scab, or that while in that condition it escaped from the custody of defendant’s herdsmen and became commingled with the flock of plaintiff, which was in a healthy condition theretofore. There is no attempt to minimize *281 plaintiff’s damage, and no error is assigned as to the size of the verdict.
In appellant’s opening brief, but two grounds for reversal are urged: (a) That the escape of the sheep from the appellant was the result of inevitable accident or act of God; (b) that the plaintiff was guilty of contributory negligence.
1. The -first contention is predicated upon the condition of the weather at the time the appellant’s flock escaped from its herdsmen, it being contended that the storm was unprecedented, and one against which appellant could not be required to safeguard its flock. There was considerable conflict in the testimony offered on behalf of the parties to this suit as to the extent and severity of the storm in question, but, as we read the record, not a single witness called by the defendant gave testimony that would entitle defendant to invoke the defense here under consideration. Appellant’s witnesses spoke of the storm as a “big one,” or a “bad one,” or “a very severe one,” but there is no evidence as to the velocity of the wind, and no attempt to give the temperature, while the amount of snow and rain which fell during the night that the sheep escaped was placed at from five to ten inches, varying with the locality, and the opinion of the various witnesses called for appellant. One of defendant’s witnesses testified as follows:
“We generally have snowstorms in October. We expect them at that time of the year. I have been on the range ever since 1884. From that time until the present we expect snowstorms in October.”
In City of Denver v. Rhodes, 9 Colo., 564, 13 Pac., 729, Mr. Justice Beck, who - wrote the opinion, uses this language:
“An 'unusual flood or rain’ does not indicate a greater or more severe rain than has heretofore occurred, *282 but rather, such a rain as does not usually, or but rarely, occurs.”
In the same opinion the following language occurs:
“The degree of care or foresight which it is'necessary to use must always be in proportion to the injury likely to result from the event rightly to be guarded against; also that such a flood as has been known to occur from a storm within the memory of man should have been anticipated by those in charge of the work of construction. ’ ’
In order to make this defense (i. e., the Act of God) availing, it was necessary for appellant to show that the escape of its sheep was due to an unprecedented storm, against which human prudence and caution could not guard, and that no act of omission or commission on the part of its employes contributed thereto.
Kansas Pacific v. Lundin, 3 Colo., 94; City of Denver v. Rhodes, supra; Elliott v. Roswell, 10 Johns., 1-11, 6 Am. Dec., 306; The St. Georg., 95 Fed., 172; C. B. & Q. v. Manning, 23 Neb., 552, 37 N. W., 462; Bryan v. Rogers, 96 Cal., 549, 31 Pac., 244; Gulf Red Cedar Co. v. Walker, 132 Ala., 553, 31 So., 374.
The evidence in this case fails to establish a state of facts entitling appellant to the defense known as “the act of God.”
2. The evidence shows that on the 18th day of October, the day following the night when the sheep escaped from the custody of appellant’s herdsmen, appellee’s herder found them wandering upon the plains without a custodian. He took charge of them, and, at night, drove them into plaintiff’s corral, where they mingled freely with the latter’s sheep until October 21st, when appellant’s foreman, having learned of their whereabouts, claimed them and- drove them away. The disease with *283 which appellant’s sheep were afflicted was, at the time appellee ’s herder took charge of them, in its incipient stage, and not apparent to the casual observer. Neither appellee nor his herdsmen knew anything of the diseased condition of the sheep. Under these circumstances, to allow the defendant to invoke the doctrine of contributory negligence and thus escape liability would be harsh and unjustifiable. Moreover, there was evidence in the record that the appellant’s-sheep had, before the day in question, mingled with the appellee’s sheep at the latter’s watering place. Again, one of the officers of the appellant admitted that if diseased sheep were allowed to bed down upon the prairie, the disease could thus be communicated to other sheep passing over such range. It is apparent that the sheep must have bedded down one night, on or near the range of appellee, before his herdsman took them in charge, and, if he had not taken them in charge, would, in all probability, have spent one or more nights, after the time he took them in charge, upon the range where he found them, hence, the act of plaintiff in caring for defendant’s sheep was not only free from negligence, but it cannot be said that his act in this respect was a contributing cause of the communication of the malady, and the-burden of proving contributory negligence was on the defendant. The evidence also discloses that the appellant’s employes, and officers knew that its flock was afflicted with scab, and knew that in that condition they had been mingling freely with appellee’s sheep, and yet they never communicated this fact to appellee, or warned him, so that he could take precautionary measures to save his flock by dipping it. On the contrary, the foreman of appellant, when he came to drive the sheep away, and after having been entertained by appellee at his home over night, was asked by appellee regarding the condition of his employer’s sheep, and was informed that they *284 were “clean.” The manager of appellant was in the neighborhood at the time the sheep were recovered, and remained there for some twenty days thereafter. He testified that he never notified Hoyt that its sheep had scab, even though he knew they had mingled with Hoyt’s sheep, and he knew that his company’s sheep were so infected. His only excuse for this gross violation of duty was, “I had reason to believe that he (meaning Hoyt) knew our sheep were infected, as everybody knew it, and I did not publish it in the papers. ’ ’
Decided June 10, A. D. 1913.
Rehearing denied July 14, A. D. 1913.
3. In his reply brief counsel for appellant, for the first time, raises the question of the insufficiency of the plaintiff’s complaint to entitle him to invoke the statutory provision regarding diseased sheep (Rev. Stats:, 1908, sec. 6399), and also the ownership of the sheep. In his closing brief, counsel insists that the evidence does not show that the plaintiff had title in the sheep. We are not disposed to'consider these contentions, for the reason that they were not seriously, if at all, relied upon by appellant on the trial, nor is anything whatever said concerning them in its opening brief. In Isabella Gold Mining Co. v. Glenn, 37 Colo., 172, 86 Pac., 349, it is said:
“It does not comport with good practice for the court to consider points raised by the appellant or plaintiff in error for the first time in his reply brief; certainly unless good cause be shown therefor, and leave of the court be obtained.”
By declining to consider appellant’s contentions just referred to, we must not be understood as intimating that they were well taken.
The judgment of the trial court is affirmed.