# CITY OF CHICAGO

*v.*

# WILLIAM DERMODY.

1. NEGLIGENCE—*corporations liable for.* A city, erecting a public building, or making an improvement in a negligent manner, is liable for resulting injury.

2. RESPONSIBILITY—*of principal, for acts of servants, agents and contractors.* A contract for such work, to be performed under direction and supervision of a board of public works and of superintendents, fixes the liability of the corporation throughout.

3. It is no defense that the contractor abandons the plan prescribed and substitutes his own without consent, for it is the duty of the corporation to see that the work be well done, but according to the specifications.

4. MASTER AND SERVANT. The same rule applies, in such case, to the city as is applied to master and servant. The city, by retaining charge of the work, must be held responsible for the manner in which it is performed. The contractors are the servants of the city, and the doctrine of *respondeat superior* applies. This case falls fully within the case of *The City of Chicago* v. *Joney*, 60 Ill. 383, and is governed by it.

5. JURY—*undue influence.* The presence in a jury room, through inadvertence, of a newspaper containing matter of a nature to influence the jury, is not cause for setting aside the verdict, after affirmative proof that it was not read by them or in their hearing.

6. VERDICT—*impeachment of.* It is the well settled practice that, while the court will never receive affidavits of jurors to impeach their verdict, affidavits of jurors will be received to support their findings when attacked.

APPEAL from the Superior Court of Cook county; the Hon. WILLIAM A. PORTER, Judge, presiding.

Mr. I. N. STILES, and Mr. JOHN LEWIS, for the appellant.

Mr. E. A. OTIS, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action on the case, brought by appellee, in the Superior Court of Chicago, against the city, to recover for personal injuries occasioned by the falling of the roof of the City

432      CITY OF CHICAGO v. DERMODY.      [Sept. T.,

Opinion of the Court.

Hall.  It consisted of a wing on the west end of the court house.  It was in the process of completion at the time of the accident, and appellee was engaged as a plasterer in the employment of Doyle & Johnson, sub-contractors.  The roof which fell was constructed by Letz & Son, who had contracted with the city to construct the iron work of the building.

The work was done under an ordinance, of which this is the material portion :

"The Board of Public Works are hereby authorized and directed to advertise for proposals, and to proceed to contract for and cause to be erected, a wing on the west side of the court house, to correspond, in its outward appearance and design, with a wing to be erected by Cook county on the east side of the court house, and *according to plans furnished by Messrs. Rose & Chapman, architects,* the internal arrangements to be subject, however, to such modifications as shall be deemed by said board best for the interests of the city of Chicago."

These plans of Rose & Chapman, with the specifications attached, were the basis upon which the contracts for erection and completion of the building were made.  But it is contended that Letz & Son constructed the roof according to their own plans, and the roof thus constructed fell and produced the injury.

The trial in the court below resulted in a verdict and judgment in favor of appellee.

It is contended that, inasmuch as Letz & Son failed to follow the plans of the architects, and constructed the roof on plans of their own, the city was thereby absolved from all liability for the injury sustained by appellee; that such deviation rendered Letz & Son alone liable to compensate appellee for the injury.

It is conceded, and if it were not, the evidence establishes the fact, that the roof was insufficient in its construction, as it fell from the weight of but a few inches of snow which had fallen on it.

Section 11 of chapter 6 of the city charter declares that, it shall be the duty of the board of public works to take special charge and superintendence, subject to such general ordinances as may be adopted, of all streets, alleys, etc., all public places, public grounds, and all markets, market places and market houses, engine houses, hospitals, armories, and all other public buildings in the city, and of the erection of public buildings.

From this provision it is apparent that the erection of the City Hall was under the especial charge of the board of public works. That duty is imposed by the charter, and could not, so far as we can see, have been transferred to any other officers of the city. The city might, under this provision, by general ordinance, control the action of the board, so as to have them subject to the will of the common council, but the board acts under the power conferred by the charter in the manner directed by the common council.

The board of public works, then, had the control and charge of this building, and the question is fairly presented whether the contractors are the servants of the city, and the doctrine of *respondeat superior* applies.

In the case of *The City of Chicago* v. *Joney*, 60 Ill. 383, this court held that the contractors with the city to deepen a portion of the Illinois and Michigan canal outside of the city limits, the work being done under a statute of the State for the benefit of the city, were the servants of the city, and it was liable for the negligence of the contractors which produced injury and loss to a person using the canal. That case proceeds upon the principle that the city is the party having the work performed, and the work is under the control of the board of public works, who are officers and agents of the city, and that they are required to see that the work is properly done; that the same rule applies in such cases to the city as is applied to master and servant; that the city, by retaining the charge of the work, must be held responsible for the manner in which it is performed.

28—61ST ILL.

In this case the plans and specifications were prepared, submitted to and adopted by the common council, and an ordinance adopted requiring the construction of the building. The ordinance requires the board of public works to advertise for proposals, and to proceed to contract for and to cause to be constructed the building of this City Hall. The statute, as well as the ordinance, put the erection of the building in charge of the board of public works. They were thus empowered and required to take charge of the construction of the building, and it was their duty to see, through their architect or otherwise, that the work was performed according to the plans and specifications for the building adopted by the common council.

If those having charge of the construction or repair of streets, bridges, etc., permit obstructions, pits, or other dangerous places, to be made in the streets by the contractor without being properly guarded, the city is liable for injury that may ensue, because the work is in the charge of the .proper city officer, and is being done by authority of the city. Nor is it an answer in such a case to say the contractor departed from his contract or violated the city ordinances in performing the work, as it is the duty of the officer having charge of the improvement to see that the plans are pursued and the proper precautions taken to secure the safety of the public; and it is negligence on the part of such officers in failing to see that they are adopted. And the same rule must prevail where the city or its officers have charge of the erection of a public building for the use of the city. The principle is the same, and the rule must be the same. But this case falls fully within the case of *The City of Chicago* v. *Joney, supra,* and is governed by it.

Here the board of public works had the charge and superintendence of the work, and it was negligence in them to permit Letz & Son to depart from the plan adopted by the common council, and the city being in charge of the work through

their board of public works, must be held liable for all the consequences of that neglect.

The board of public works should have prevented or arrested the contractors from substituting other plans. They should have known, either by personal inspection or through their architect, that the change was being made, and have arrested it.

The evidence shows that the plans of Letz & Son were defective, and that they were the cause of the injury.

The city, having undertaken to construct this building, was bound to employ skillful and faithful contractors to carry out such plans as may or would be adopted by skillful and reliable architects. But in this case the board of public works permitted the contractors to reject the plans furnished by architects and adopted by the city, and to adopt plans of their own, and there is no evidence that their plans were the result of skill, safe, or at all sufficient. On the other hand, we see the roof gave way and fell under the weight of but a few inches of snow. This, with the other evidence, renders it almost certain beyond a reasonable doubt that the plan adopted by the contractors was inherently defective.

It is next urged that the verdict of the jury should have been set aside, because a copy of a newspaper called "The Chicago Tribune," containing the charge of the judge of the recorder's court of Chicago to a grand jury, calling their attention to the fact that the roof of the Hall had fallen, had been left in the jury room. This fact was shown to the court by the affidavit of the officer having the jury in charge, when deliberating on their verdict. But it appears that the paper having been there was purely accidental, and one of the jurors filed an affidavit that the jury had agreed upon their verdict and were discussing the measure of damages when the paper was discovered under the table, was picked up by a juror and handed to affiant, who laid it on the table, where it remained without any juror having read one word in it before the verdict was complete.

If this be true, we are at a loss to perceive how it is possible that any, the slightest, injury, could have resulted to appellant from the paper being in the room; and it is the well settled practice that, whilst the court will never receive affidavits of jurors to impeach their verdict, affidavits of jurors will be received to support their finding, when attacked. It is only when it appears to the court that injury may have resulted to a party from such an inadvertence, that the court should set aside the verdict. Had the paper been read, then it might, perhaps, have been ground for a new trial, as the judge's charge would have been before, and considered by, them, and not admitted by the court as evidence, and which might have been prejudicial to appellant. But in this case we see no such injury could possibly have resulted.

We perceive no error in this record, and the judgment must be affirmed.

*Judgment affirmed.*