# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

THE CITY OF CHICAGO

*v.*

THOMAS MURDOCK *et al.*

*Opinion filed October 24, 1904.*

1. RESPONDEAT SUPERIOR—*application of the rule to work done by independent contractor.* While the principle of *respondeat superior* does not, in general, extend to work done by an independent contractor, yet if the contract requires the doing of work which is intrinsically dangerous, or if the work is done pursuant to a special franchise or charter power, the rule of *respondeat superior* applies.

2. COURTS—*will take judicial notice that explosions of dynamite are dangerous.* It is a matter of common knowledge and universal experience that the use of dynamite as an explosive is intrinsically dangerous, and courts will take judicial notice of the fact.

3. MUNICIPAL CORPORATIONS—*when city is liable for negligence of contractor.* A municipal corporation which contracts for the making of a public improvement under the supervision of its own engineer or other proper officer and subject to his orders, is liable, under the doctrine of *respondeat superior,* for damage caused by the negligence of the contractor in doing the work.

4. SAME—*when officer in charge of work may waive restriction in contract.* A restriction against the use of explosives in tunnel excavation may be waived on behalf of the city by the commissioner

of public works, under a contract reserving to him the right to decide all questions arising as to the proper performance of the work.

5. Same—*city liable for damage from contractor's use of explosives in tunnel work.* A provision in a water tunnel contract restricting the use of explosives to rock excavation does not relieve the city from liability for damage to property of third persons from the contractor's use of explosives in other kinds of excavation with the knowledge and consent of the city officer having charge.

Appeal from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. S. Tuthill, Judge, presiding.

This is an action on the case brought by the appellees, against the appellant, to recover for damages to their building resulting from the use of dynamite in the construction of a tunnel for the city.

On September 15, 1895, the city entered into a contract with J. J. Duffy for the construction of a portion of a water tunnel under the surface of the ground, extending from a point near the center of Green street and Grand avenue to the pumping station at the corner of Filmore street and Central Park avenue, a distance of about four miles. The plaintiffs owned a four-story and basement building, having a frontage of about eighty feet, immediately west of Union Park place, known as Nos. 530-536 West Lake street. The work on the portion of the tunnel in the vicinity of plaintiffs' building was done in May and June, 1896. The tunnel extended through or under the south-east corner of the block in which the building is located, and in making the excavation dynamite was used by the contractor to the extent that the building was jarred and shaken so that the walls were cracked and caused to settle, finally falling into such a dangerous condition that the city, through its building commissioner, notified the plaintiffs to repair the same within five days, and in default of their doing so the city would proceed against them according to law. Upon a trial before the court

and a jury, judgment was rendered for the plaintiffs for $1400 and costs, which has been affirmed by the Appellate Court, and hence this appeal.

THOMAS J. SUTHERLAND, (EDGAR BRONSON TOLMAN, Corporation Counsel, of counsel,) for appellant.

WILSON, MOORE & McILVAINE, for appellees.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The principal grounds of reversal insisted upon by counsel for appellant are stated as follows in their argument:

(1) "The circuit court erred on the trial in permitting the witness for the appellees, William D. Kent, to answer the following question on his direct examination: 'I will ask whether you, on behalf of the city, made any objection to the use of dynamite in boulder clay, running from the Carroll avenue shaft west.'

(2) "The circuit court erred on the trial in giving to the jury the appellees' first and second instructions.

(3) "The circuit court erred on the trial in refusing, at the close of the evidence, to exclude the same from the jury and to instruct the jury to find the city not guilty.

(4) "The verdict and judgment were and are against the law and the evidence.

(5) "The circuit court erred in overruling the motion for a new trial and rendering judgment on the verdict."

It is not denied that the evidence fairly tended to prove the plaintiffs' case on their theory, but the contention is that the acts charged in the declaration as causing the injury were the wrongful or negligent acts of an independent contractor, for which the municipality is not liable. Hence the second, third and fourth of the foregoing alleged errors involved the same legal questions and may be properly considered together.

The general rule is, that the principle of *respondeat superior* does not extend to cases of independent contractors

where the party for whom the work is done is not the immediate superior of those guilty of the wrongful act and has no control over the manner of doing the work under the contract. (2 Dillon on Mun. Corp.—3d ed.—sec. 1028.) But the same author says in the following section: "The general rule is stated in the preceding section, but it is important to bear in mind that *it does not apply where the contract directly requires the performance of a work intrinsically dangerous,* however skillfully performed. *In such a case,* the party authorizing the work is justly regarded as the author of the mischief resulting from it, whether he does the work himself or lets it out by contract." We adopted and applied that rule, with the above exception as applied to a municipal corporation, in *City of Joliet* v. *Harwood,* 86 Ill. 110, and again in *Village of Jefferson* v. *Chapman,* 127 Ill. 438, and in the latter case quoted with approval the language of Judge Dillon set forth in section 1029.

Another exception to the general rule applicable to this case is, that where an individual or a corporation does work pursuant to a special franchise or charter power, the doctrine of *respondeat superior* is applicable. (*North Chicago Street Railroad Co.* v. *Dudgeon,* 184 Ill. 477, and authorities cited; especially see *West* v. *St. Louis, Vandalia and Terre Haute Railroad Co.* 63 Ill. 545; 16 Am. & Eng. Ency. of Law,— 2d ed.—201.) In the recent case of *FitzSimons & Connell Co.* v. *Braun & Fitts,* 199 Ill. 390, we said (p. 394): "The performance of the work of excavating the tunnel underneath the buildings of a populous city with dynamite was intrinsically dangerous, no matter how carefully and skillfully the explosions were conducted. The nature and power of dynamite as an explosive have been demonstrated by universal experience, and it is a matter of common knowledge that the use of dynamite as an explosive is intrinsically dangerous, and of this the courts will take judicial notice.— 17 Am. & Eng. Ency. of Law, (2d ed.) 909; *Norwalk Gas Light Co.* v. *Norwalk,* 63 Conn. 527."

The work contracted to be done in this case was by virtue of the corporate powers of the city of Chicago, and the case is therefore clearly within both of the foregoing exceptions.

It is also the settled law of this State, that when a municipal corporation contracts for the making of a public improvement under the supervision of its own engineer or other proper officer and subject to his orders, the corporation is liable for damages caused by the negligence of the contractor, the doctrine of *respondeat superior* being applicable. In *City of Chicago* v. *Joney,* 60 Ill. 383, it was insisted by the city that under its contract with its contractors, Fox, Howard & Walker, the latter were not its servants "but independent contractors, and alone liable for damages occasioned by the manner in which the work was done," and it was there said (p. 387) : "Portions of the contract are found in the record, in which it appears the city retained a supervisory control over the work and had power to dismiss any person employed by the contractors on the work, and the dismissions·of the board of public works, who represented the city, were final and conclusive in every case that might arise under the contract. Here was dependence—serviency—in the contractors, and for their negligence the doctrine of *respondeat superior* must apply. By the contract the entire work was to be under the immediate direction and superintendence of the city, through the board of public works. The principle is well settled when a contractor is under the direction and control of his employer, the employer is liable for the negligence of the contractor." The same doctrine was announced and followed in *City of Chicago* v. *Dermody,* 61 Ill. 431.

Upon looking into the contract between the city of Chicago and the contractor, Duffy, we find that it was signed by W. D. Kent, commissioner of public works, on behalf of the city, and contains, among other provisions, the following : "All of the material used in said work, manner, time and place of doing same, together with all things therewith

connected, must be in each and every particular satisfactory to the commissioner of public works of said city." "Said work shall be done in accordance with plans prepared for the doing of the same.  *  *  *  Said work shall be commenced on or before the first day of October, A. D. 1895, shall progress regularly and uninterruptedly after it shall have been begun, except as shall be otherwise ordered by the commissioner of public works," etc. "Should the commissioner of public works deem it proper or necessary, in the execution of the work, to make any alterations which shall increase or diminish the expense, such alterations shall not vitiate or annul the contract or agreement hereby entered into, but the said commissioner shall determine the value of the work so added or omitted, such value to be added to or to be deducted from the contract price, as the case may be. And the said party of the first part covenants and agrees to perform all of said work under the immediate direction and superintendence of the commissioner of public works of the city of Chicago, and to his entire satisfaction, approval and acceptance. All material used and all labor performed shall be subject to the inspection and approval, or rejection, of said commissioner, and the said city of Chicago hereby reserves to its commissioner of public works the right finally to decide all questions arising as to the proper performance of said work." In short, the contract clearly shows upon its face that the city retained, through its commissioner of public works, the absolute control and supervision of the work and the manner in which it should be performed. Therefore, under the foregoing decisions, (*City of Chicago* v. *Joney,* and *City of Chicago* v. *Dermody, supra,*) Duffy was not an independent contractor, and for his negligence the doctrine of *respondeat superior* must apply.

It is said, however, that the evidence in this case proves that the dynamite, the use of which caused the injury complained of, was in what is termed "boulder clay," in positive violation of the express terms of the contract. The commis-

sioner of public works testified that he had charge of the work, and says: "When. I went down in the tunnel at the times I indicated, I made an inspection of the character of the soil through which the tunnel was being constructed. I knew what the character of the soil was between the Carroll avenue shaft and the Hoyne avenue shaft. We had borings indicating what the soil was. Sometimes we found blue clay; at others, mixture of blue clay, boulders, and as it got farther west we struck solid rock. My recollection is that we struck solid rock about Wood street, and from Wood street east the material was largely boulders and clay." His evidence, as well as that of other witnesses, is to the effect that explosives were used in boulder clay, but it cannot be determined from this record that blasting in solid rock, or what is called in the contract "sound rock," did not in some degree contribute to producing the alleged injury. The clause relied upon as prohibiting the use of dynamite is found in the specifications attached to the contract for the guidance of bidders and made a part of the agreement. It reads as follows: "The use of explosives will not be allowed or permitted except in rock excavation." It can hardly be regarded as an absolute prohibition against the use of explosives except in rock excavation. It is rather a reservation to the city to control that matter, but, however construed, there can, we think, be no serious question as to the right of the city to waive it under the reservation to its commissioner of public works to control the manner of doing the work, together with all things therewith connected, to the satisfaction of the commissioner of public works, and which "reserves to its commissioner of public works the right finally to decide all questions arising as to the proper performance of said work." The commissioner testified: "They got the clay out by drilling and then putting charges of powder in,—dynamite blasting. I saw them drilling in there in the excavation, and I saw them there when they were laying up their brick work and packing it up, at various times when I was there, not only in that section, but in other

sections. I never was there when there was any discharging of dynamite. I never saw them insert it in that section. I saw them drilling for it. The city engineer reported as to the progress and methods there and as to whether the contractor was living up to the specifications or not. We had a meeting almost daily with all of the heads. They reported dynamite was being used in the tunnel proper but not in the shafts. It was necessary to use dynamite to get out the boulder clay. In some of the blue clay it was not absolutely necessary. At other points we found it hard as rock, and there they had to use dynamite. They could not make any progress without it. * * * I know they had to use dynamite there in the combination of boulder and clay where they got it together, and also in some rock, and that is all I know,—the general knowledge that dynamite was used in the boulder and clay there, as they did also in the regular formation." All this testimony was admitted without objection or exception, and it clearly shows that the dynamite was used by and with the consent of the commissioner of public works, as necessary in the performance of the work in making the excavation.

But two instructions were given at the instance of the plaintiffs, the first of which announces the constitutional provision that private property shall not be taken or damaged for public use without just compensation therefor being made to the owner, and directs the jury that if they believe, from the evidence, that the plaintiffs' property was damaged by the use of explosives, etc., they should find for the plaintiffs and assess their damages at the reasonable cost of repairs necessary to place said building in the condition it was before such damage, if such reasonable cost appears from the evidence; and the second lays down the rule announced in *FitzSimons & Connell Co.* v. *Braun & Fitts, supra,* as to the use of dynamite in a populous city being inherently dangerous, however skillfully handled, and also directs the jury that if they believe, from the evidence in this case, "that the defendant caused to be constructed by a contractor a water

tunnel for the use of the city and as part of its water system in the vicinity of the property of the plaintiffs, and that dynamite was used in the excavation of said tunnel, * * * and if the jury further believe, from the evidence, that injuries were caused to the building of the plaintiffs described in their declaration by the explosion of dynamite used in the excavation of said tunnel, then the jury will find for plaintiffs in this case and assess plaintiffs' damages," etc. These instructions are in conformity with the views hereinbefore expressed, and we think correctly announce the rules of law applicable to the case. There was no error in giving them.

After the commissioner of public works had testified to the foregoing facts as to his consent to the use of dynamite, counsel for plaintiffs asked the questions quoted in appellant's first ground of reversal. The objections to it by counsel for the defendant, as shown by the abstract, were: "The witness cannot draw any conclusions as to what he did as commissioner of public works. * * * It is incompetent to put the question as to what the witness did as commissioner of public works." The question did not call for the conclusion of the witness, and we do not think, for the reasons above stated, it was incompetent to show what he did in the supervision of the work. He answered the question, "I simply instructed them to keep their charges of dynamite in there as small as possible,—not to use any more than was absolutely necessary; that was the only objection I made to it." In view of the former statements of the witness, which were made without objection, this question and the answer were of no controlling importance, but there was no error in overruling the defendant's objections. We concede that the commissioner of public works could not authorize a departure from the express provisions of the contract, except in so far as he was authorized by the city, in the contract, to do so; but as we have already said, this contract placed the whole matter in his hands and under his supervision. The burden of the argument of counsel for the

appellant is, that the contract prohibited the use of explosives and that the commissioner had no power to waive that provision. We think it clear that if all that counsel claim should be admitted, still it was the duty of the city to see that that provision of the contract was carried out,—at least to use reasonable diligence, through its proper officers, to see that it was observed,—and that it could not escape liability to third parties who have suffered damages by a violation of the provision.

The other points made on the ruling of the trial court in the admission and exclusion of testimony are not, in our view of the case, of sufficient materiality to justify an extension of this opinion by discussing them separately.

The case appears to have been tried in the court below on the theory of the instructions asked by the defendant and given by the court, the first of which is, in substance, that the sole question for the consideration of the jury is, was the plaintiffs' property injured by the blasting in the tunnel by the contractor, Duffy, and if it was, to what extent, and that the jury is not entitled to charge against the defendant any injury by the settling of the building produced by other causes than the blasting in the tunnel, and if the injury was the proximate result of the settling of the building and not of the blasting in the tunnel, they should find the defendant not guilty. The second, that if the jury believed, from the evidence, that there was no blasting in the said tunnel by the contractor, Duffy, which, through and by reason of concussion resulting therefrom, injured the premises of the plaintiffs, then the jury should find the defendant not guilty. The third is to the same effect; and the fourth, that if any part of the alleged injury was caused by defective construction or depreciation from wear and tear, or the character of use to which the premises were put previous to May, 1896, or from other causes disconnected from the construction of the tunnel by the contractor, Joseph J. Duffy, then for such injury the defendant is not liable, and if the jury find that the

injury was not caused by blasting in the tunnel by said contractor, Duffy, then the jury should find the defendant not guilty. The fifth relates to the value of the testimony of the various witnesses. The sixth, to the burden of proof. The seventh, that if the jury believe that the evidence is evenly balanced or preponderates in favor of the defendant, then the verdict should be for the defendant. The tenth, that if the jury believe that any witness has willfully sworn falsely, etc., the jury are entitled to disregard the entire testimony of such witness. The eleventh, that the jury are the judges of the credibility of the witnesses; and the twelfth, that in determining upon which side the preponderance of evidence exists, the jury should consider the opportunities of the several witnesses for seeing and knowing the things about which they testify, as shown by the evidence, etc.

But two instructions asked by the defendant were refused, —the eighth and ninth. The eighth is to the effect that each member of the jury is entitled to maintain the convictions he may arrive at from the evidence and instructions of the court, etc.; and the ninth, that in arriving at their verdict the jury should not consider any of the remarks of the court or counsel during the introduction of the evidence in the course of the trial. It is not claimed that there was reversible error in the refusal of either of these instructions, and it is therefore apparent that the question as to the liability of the city upon the ground that it was not liable for the acts of Duffy, as an independent contractor, under the contract, was in no way raised by instructions, other than the request to take the case from the jury.

We are satisfied that in any view of this case the verdict of the jury and the judgment of the trial court were in conformity with the law and facts of the case, and that the Appellate Court committed no error in affirming that judgment.

*Judgment affirmed.*