Theresa Hamill, Administratrix, Appellee, v. Peter Territilli et al., on appeal of City of Chicago, Appellant.

## Gen. No. 20,855.

1. MASTER AND SERVANT, § 836*—*when servant not independent contractor.* Under a contract whereby a city had the right to inspect and approve not only the material and labor but also the tools, appliances and methods used by a contractor, the foremen of the contractor were compelled to obey the orders of the city engineer, the city had the right to dismiss employees who did not obey instructions as to carrying out the contract, and the city reserved the right to make alterations in the plans, the contractors were not independent contractors but servants of the city within the rule as to the doctrine of *respondeat superior.*

2. MASTER AND SERVANT, § 836*—*what is immaterial in determining whether person is independent contractor.* Under a contract whereby a contractor was a servant of a city, since the city retained the control and supervision of the work, it was immaterial that such control was not actually exercised.

Appeal from the Superior Court of Cook county; the Hon. WILLIAM FENIMORE COOPER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1914. Affirmed. Opinion filed October 6, 1915.

**Statement by the Court.** This is an action on the case by Theresa Hamill, administratrix of the estate of William Hamill, deceased, against Peter Territilli, Ole Scully and the City of Chicago, for their alleged negligence in causing the death of the intestate. On the trial of the case below the jury returned a verdict against the three defendants in the sum of $8,000, upon which verdict the court rendered judgment, and from

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

this judgment an appeal has been prosecuted by the City of Chicago alone, whom we shall hereafter designate as the appellant.

The intestate, at the time of his death, was employed by Territilli & Scully in laying a sewer pipe in the bottom of a trench which was being dug by the said Territilli and Scully under a contract with the appellant. The intestate met his death by the caving in of one side of the trench in which he was working. The negligence charged is that the walls or sides of this trench were inadequately braced, as a result of which the west wall caved in for a distance of fifteen or twenty feet while the intestate was working in the bottom of the trench, injuring him so severely as to cause almost instant death.

JOHN W. BECKWITH and N. L. PIOTROWSKI, for appellant; DAVID R. LEVY and MATTHEW J. O'BRIEN, of counsel.

GORMAN, POLLOCK, SULLIVAN & LIVINGSTON, for appellee.

MR. JUSTICE PAM delivered the opinion of the court.

There is no controversy on any question of fact, the only question for review being one of law as to the construction of the contract between the said Territilli and Scully and the appellant, under which the work was being done at the time plaintiff's intestate met his death. Both in the brief filed and in the oral argument made before this court, counsel for the appellant admitted that the only question in the case was whether or not, under the contract of employment, the relationship existing between Territilli and Scully and the appellant was that of independent contractor or that of master and servant, and further asserted that this question must be determined solely from the written contract offered in evidence. Appellee concurs in this statement as to the issues involved, and as we view the

facts in the case, under the rule as laid down in *Pioneer Fireproof Const. Co. v. Hansen*, 176 Ill. 100, and in *Foster v. City of Chicago*, 197 Ill. 264, we are of a similar opinion.

Appellant strongly contends that under the contract of employment Territilli and Scully were independent contractors for whose negligence it was not responsible, while appellee urges the contrary.

In its brief and oral argument appellant has placed great reliance in the case of *Foster v. City of Chicago*, *supra*, which is also reported in 96 Ill. App. 4. In the course of the decision of the Appellate Court, which was adopted as the *per curiam* decision of the Supreme Court, it was said (p. 7):

"The general rule is stated by Bishop on Noncontract Law, sec. 602, to be that 'a contractor who simply undertakes to bring about a result after his own methods is not a servant' of his employer, and the latter is not liable for such contractor's negligence; while on the other hand, one 'who, though he is to have a stipulated price for a thing, executes it under the direction and superintendence of the employer,' is a servant, and the employer is liable to third persons injured by the negligence of such a servant."

And the court further stated in the course of its opinion (p. 7):

"The liability of the city, therefore, depends mainly upon the contract—whether or not, by the written agreement, the work in doing which appellant's intestate lost his life was done under the direction and superintendence of the city, in such sense as to make the latter liable."

In that case the court held that the relationship of independent contractor existed and that the city was not liable. Appellant, in urging that the *Foster* case, *supra*, controls in the case at bar, calls the attention of this court particularly to the similarity of facts in both cases; and our examination of the facts shows that the circumstances and manner of the accident are

almost identical. While appellant further argues that the contracts in both cases are practically the same, we are of a contrary opinion. Appellee, however, insists that our Supreme Court, in *City of Chicago v. Murdock,* 212 Ill. 9, has adopted a different construction of the contract in issue in *Foster v. City of Chicago, supra.* In order to determine whether or not such was the effect of the decision in *City of Chicago v. Murdock, supra,* we have carefully examined the contracts offered in evidence in both the *Foster* and *Murdock* cases, *supra,* and find that they are in fact identical. While it is true that in the *Murdock* case the court held that the doctrine of *respondeat superior* applied because the work performed under the contract was inherently dangerous, yet the court also held that the contract clearly showed upon its face that the city of Chicago retained, through its commissioner of public works, absolute control and supervision of the work, and the manner in which it should be performed. In arriving at this conclusion, the court in the course of its opinion, stated:

"Upon looking into the contract between the city of Chicago and the contractor, Duffy, we find that it was signed by W. D. Kent, commissioner of public works, on behalf of the city, and contains, among other provisions, the following: 'All of the material used in said work, manner, time and place of doing same, together with all things therewith connected, must be in each and every particular satisfactory to the commissioner of public works of said city. Said work shall be done in accordance with plans prepared for the doing of the same. * * * Said work shall be commenced on or before the first day of October, A. D. 1895, shall progress regularly and uninterruptedly after it shall have been begun, except as shall be otherwise ordered by the commissioner of public works,' etc. 'Should the commissioner of public works deem it proper or necessary, in the execution of the work, to make any alterations which shall increase or diminish the expense, such alterations shall not vitiate or annul the contract

or agreement hereby entered into, but the said commissioner shall determine the value of the work so added or omitted, such value to be added to or to be deducted from the contract price as the case may be. And the said party of the first part covenants and agrees to perform all of said work under the immediate direction and superintendence of the commissioner of public works of the city of Chicago, and to his entire satisfaction, approval and acceptance. All material used and all labor performed shall be subject to the inspection and approval, or rejection, of said commissioner, and the said city of Chicago hereby reserves to its commissioner of public works the right finally to decide all questions arising as to the proper performance of said work.' In short, the contract clearly shows upon its face that the city retained, through its commissioner of public works, the absolute control and supervision of the work and the manner in which it should be performed. Therefore, under the foregoing decisions (*City of Chicago v. Joney,* 60 Ill. 383, and *City of Chicago v. Dermody,* 61 Ill. 431, *supra*), Duffy was not an independent contractor, and for his negligence the doctrine of *respondeat superior* must apply.''

The very language in the contract quoted by the court in the *Murdock* case, *supra,* was construed in the *Foster* case, *supra,* by Judge Freeman of the Appellate Court as merely reserving to the city the right to generally supervise the work so as to insure compliance with the contract and to obtain the result called for thereby. The opinion in the *Murdock* case is apparently adhered to in the case of *Boyd v. Chicago & N. W. Ry. Co.,* 217 Ill. 332, wherein the court said:

''Plaintiff in error insists the railway companies are liable under the decision in the *City of Chicago v. Murdock,* 212 Ill. 9, on the ground that the Chicago and Northwestern Railway Company retained control and direction of the work. In that case the work was intrinsically and inherently dangerous, and in such a case the rule of *respondeat superior* applies although

the work is done by an independent contractor.    The commissioner of public works also had control of the manner and method of doing the work, with power to inspect, approve or reject all material and labor and to make alterations in the work.''

Had the contract in the case at bar contained only provisions similar to those set forth in the contracts in the *Foster* and *Murdock* cases, *supra,* the said Territilli and Scully, under the decision of the later case, must be considered not as independent contractors, but as servants of the appellant, for whose negligence it is liable.    However, a comparison of the contract in the case at bar with those in the *Murdock* and *Foster* cases shows that the contract now before us contains not only all the provisions construed in the aforementioned cases, but contains, in addition, others increasing and augmenting the power of the appellant to control and supervise the work to be performed thereunder.    In the *Murdock* and *Foster* cases the contracts provided that ''all material used and all labor performed shall be subject to the inspection and approval or rejection, of said commissioner, and the said City of Chicago hereby reserves to its commissioner of public works the right finally to decide all questions arising as to the proper performance of said work,'' while in the case at bar the contract further provided that *''all appliances, tools and methods used* shall also be subject to the inspection and approval of the said board of local improvements.''    (Italics ours.)    In addition, the contract in the case at bar provides:

''The contractor shall employ capable superintendents or foremen to represent him on the work, and *they shall receive and obey orders from the engineer.''* (Italics ours.)

''The Board of Local Improvements shall have authority to order the dismissal of any employee on the work who refuses or neglects to obey any of its instructions relating to the carrying out of the provisions and intent of these specifications, or who is incompetent,

unfaithful, abusive, threatening or disorderly in his conduct, and such person shall not be again employed on the work.''

Appellant, under this contract, had the right to inspect and approve not only the material and labor but also the tools, appliances and methods used. The foremen of Territilli and Scully were compelled to obey the orders of the engineer of appellant. Appellant also had the right to order the dismissal of any employee who refused or neglected to obey any of its instructions relating to the carrying out of the provisions and intent of the specifications which under the contract were a part thereof; moreover, appellant reserved to itself the right to make any alterations in the plans and specifications it deemed desirable or necessary, and such change would not annul or vitiate it. Clearly, therefore, under the contract in the case at bar, tested in the light of the decisions, it must be held that appellant did retain the absolute control and supervision of the work and the manner in which it should be performed. The fact that this right of control was not exercised is immaterial; it is sufficient that the right existed.

"The absolute test is not the exercise of power of control, but the right to exercise power of control. * * * Although the trustees should be across the Atlantic, nevertheless, * * * if they retained the power to control and direct the work, they would be liable; because it is the possession of the right of interference, the right of control, that puts upon a party the duty of seeing that the person who stands in that relation does his duty properly. If they have retained to themselves the right of directing the mode of doing the work, then, if the work is done wrong, the simple principle is that they are responsible." *Linnehan v. Rollins,* 137 Mass. 123. To the same effect are 16 Am. & Eng. Encyc. of Law, p. 186; 26 Cyc. of Law and Proc. p. 1547, and Moll on Ind. Cont. & Emp. L. P. 43. "The relation of master and servant does not cease 'so long as the master reserves any control or right of control

over the method and manner of doing the work, or the agencies by which it is to be effected." *Speed v. Atlantic & P. R. Co.*, 71 Mo. 303.

We are therefore of the opinion that Territilli and Scully were not independent contractors but the servants of the appellant, and for their negligence the doctrine of *respondeat superior* must apply.

Finding no reversible error, the judgment will be affirmed.

*Affirmed.*